PEOPLE v DUCK

Docket No. 73642. Submitted January 16, 1985, at Detroit.—Decided
    December 16, 1985. Leave to appeal applied for.

Defendant, Randal L. Duck, pled nolo contendere to a charge of
    attempted unarmed robbery, Calhoun Circuit Court, Paul Nico-
    lich, J. Defendant's presence in Michigan had been obtained
    pursuant to Article IV(a) of the Interstate Agreement on De-
    tainers. He was in custody in Illinois and, the day before the
    transfer to Michigan, he was brought before a judge who
    explained that defendant was to be transferred and that his
    release to the Michigan authorities had been approved by the
    Governor of Illinois. Following imposition of sentence, defen-
    dant appealed, alleging that his conviction should be vacated
    because he was not provided with a pretransfer hearing under
    the Uniform Criminal Extradition Act and was not informed of
    his right to counsel and his right to apply for habeas corpus to
    challenge his extradition. *Held:*

    1. Because Illinois has adopted both the Interstate Agree-
    ment on Detainers and the Uniform Criminal Extradition Act,
    the defendant was entitled to all the safeguards provided by
    the Extradition Act where his transfer was obtained pursuant
    to the Agreement on Detainers. He was deprived of his right to

REFERENCES

Am Jur 2d, *Criminal Law* §§ 404-407, 858.

Am Jur 2d, *Extradition* §§ 6, 24, 47, 50-54, 74.

Availability of post conviction relief under 28 USCS § 2254 based on
    alleged governmental violation of Interstate Agreement on De-
    tainers Act (18 USCS Appx). 63 ALR Fed 155.

Availability of post conviction relief under 28 USCS § 2255 based on
    alleged governmental violation of the Interstate Agreement on
    Detainers Act (18 USCS Appx). 58 ALR Fed 443.

Arrest and transportation of fugitive without extradition proceed-
    ings.as violation of civil rights actionable under 42 USCS § 1983.
    45 ALR Fed 871.

Validity, construction, and application of Interstate Agreement on
    Detainers. 98 ALR3d 160.

Necessity that demanding state show probable cause to arrest
    fugitive in extradition proceedings. 90 ALR3d 1085.

a pretransfer hearing. However, there are no penalty provisions in either act which would require dismissal of the charges because of the failure to provide such a hearing.

2. Any challenge to the extradition proceedings should have been made in Illinois. Once defendant had submitted to the jurisdiction of the Michigan court, it was too late to oppose the extradition.

3. Defendant was not denied the effective assistance of counsel since it would not have changed the outcome of the proceedings had his attorney raised the issue of defendant's being deprived of a pretransfer hearing.

Affirmed.

1. CRIMINAL LAW — EXTRADITION — INTERSTATE AGREEMENT ON DETAINERS.

The procedural safeguards to which a prisoner is entitled by the provisions of the Uniform Criminal Extradition Act apply to proceedings to transfer a prisoner against his will under Article IV of the Interstate Agreement on Detainers in a state which has adopted both of those uniform laws (MCL 780.1 *et seq.,* 780.601; MSA 28.1285[1] *et seq.,* 4.147[1]).

2. CRIMINAL LAW — EXTRADITION — INTERSTATE AGREEMENT ON DETAINERS — PRETRANSFER HEARING.

There are no penalty provisions in the Interstate Agreement on Detainers for a failure to provide a prisoner a pretransfer hearing; therefore, the failure to provide such a hearing does not divest the court in the charging state of jurisdiction over the subject matter (MCL 780.601; MSA 4.147[1]).

3. CRIMINAL LAW — EXTRADITION.

Challenges to extradition proceedings must be made in the asylum state; opposition to extradition is too late once the prisoner has submitted to the jurisdiction of the charging state.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Patricia S. Woodall,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Karla K. Goodman),* for defendant on appeal.

Before: T. M. Burns, P.J., and V. J. Brennan and W. A. Porter,* JJ.

W. A. Porter, J. On April 20, 1983, defendant pled nolo contendere to attempted unarmed robbery, MCL 750.530; MSA 28.798 and MCL 750.92; MSA 28.287. He was sentenced on May 23, 1983, to from three years and four months to five years imprisonment. He appeals as of right, claiming that his conviction should be vacated because his transfer from Illinois to Michigan was improperly achieved under Article IV(a) of the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1). In particular, defendant argues that he was denied his right to a pretransfer hearing under the Uniform Criminal Extradition Act when Illinois transferred defendant to Michigan pursuant to Article IV(a) of the Interstate Agreement on Detainers without first informing him of his right to counsel and his right to apply for a writ of habeas corpus to challenge the Michigan prosecutor's temporary custody request.

On March 3, 1983, while defendant was in custody in Illinois, the Calhoun County prosecutor signed a request for temporary custody of defendant pursuant to Article IV(a) of the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1). This request notified Illinois correctional officials that defendant was wanted for trial in Michigan in connection with an armed robbery charge. This request was received by the Illinois officials on or about March 10, 1983.

On March 17, 1983, defendant was informed by the Illinois officials that he was wanted in Michigan on the armed robbery charge. Defendant was given two forms which explained that he could either (1) request final disposition of the charge, (2)

* Circuit judge, sitting on the Court of Appeals by assignment.

ask the Governor of Illinois to disapprove of the Calhoun County prosecutor's request for temporary custody, or (3) challenge the prosecutor's request for temporary custody under the Uniform Criminal Extradition Act. Defendant refused to sign the forms on the advice of Michigan counsel.

On March 29, 1983, the Governor of Illinois signed a document which approved the temporary release of defendant from Illinois custody to the custody of the Calhoun County prosecuting attorney.

On April 11, 1983, defendant appeared before an Illinois circuit court judge whereupon the following discussion took place:

*"By the Court:* You are Mr. Randall Duck, is that right, sir?

*"Mr. Duck:* How do you spell it?

*"By the Court:* Which name? First or the last?

*"Mr. Duck:* First.

*"By the Court:* R-a-n-d-a-l-l.

*"Mr. Duck:* No.

*"By the Court:* You are Mr. Duck?

*"Mr. Duck:* Yes.

*"By the Court:* What is your first name?

*"Mr. Duck:* Randal.

*"By the Court:* Mr. Randall *[sic]* Duck are you aware why you are in court this morning?

*"Mr. Duck:* Uh.

*"By the Court:* You understand that apparently, which state is this here?

*"Mr. Duck:* Michigan.

*"By the Court:* They want you back and I believe they are claiming that you have a charge up there on armed robbery.

*"Mr. Duck:* I guess.

*"By the Court:* Is that your understanding of why you are in court this morning?

*"Mr. Duck:* Somewhat. Something like that.

"*By the Court:* I have gone over the papers here, Mr. Duck, and it appears that everything is in order here. They have a right under the Interstate Act to take you back to Michigan even though you are presently an inmate of our penitentiary system here. There is apparently a case from our Appellate Courts that says you have a right to be brought into court prior to being taken to Michigan. That case did not say exactly what we are supposed to do when you come into court. They have never given us that information. Is there anything that you want to say?

"*Mr. Duck:* Don't I get a lawyer?

"*By the Court:* Sir, there's nothing that says you have a right to a lawyer at this stage. You most certainly will when you return to Michigan. The request has been made through the Governor's Office. Governor Thompson has approved your release to the State of Michigan on the prosecution of armed robbery. For the life of me I am not aware of any matter to bring up here. If there's something you are aware of I'll be happy to listen.

"*Mr. Duck:* That's fine, sir.

"*By the Court:* You understand you will be taken to Michigan and there is *[sic]* arrangements with the Interstate Act when that trial is over with for you to be returned to the State of Illinois.

"*Mr. Duck:* How long do they have to come get me?

"*By the Court:* I imagine they are probably making arrangements right now because I am sure they are aware you are being brought to court this morning. I am sure you don't have to worry about waiting too long."

The next day, on April 12, 1983, defendant was transferred to Michigan for trial on the armed robbery charge. On April 20, 1983, during his trial, defendant pled nolo contendere to attempted unarmed robbery. Following his sentencing, defendant appealed. Defendant then requested this Court to remand the matter to the trial court for

an evidentiary hearing. This Court granted this request and the hearing was conducted on October 1, 1984.

At the hearing on remand, defendant argued that his conviction for attempted unarmed robbery should be vacated because of the violation of Article IV(a) of the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1) or, in the alternative, because of ineffective assistance of trial counsel in failing to raise the Interstate Agreement on Detainers issue before defendant's trial. The trial court denied defendant's request and the matter is now before us for review.

In *Cuyler v Adams,* 449 US 433; 101 S Ct 703; 66 L Ed 2d 641 (1981), the United States Supreme Court discussed the relationship between the IAD and the Uniform Criminal Extradition Act. The Court held that:

"a prisoner incarcerated in a jurisdiction that has adopted the Extradition Act is entitled to the procedural protections of that Act—particularly the right to a pretransfer hearing—before being transferred to another jurisdiction pursuant to Art IV of the Detainer Agreement." 449 US 433, 435.

The Court concluded as a matter of federal law that a prisoner being transferred against his will under Article IV of the Agreement on Detainers is entitled to whatever safeguards of the extradition process he might otherwise have enjoyed:

"Those safeguards include the procedural protections of the Extradition Act (in those States that have adopted it), as well as any other procedural protections the sending State guarantees persons being extradited from within its borders." 449 US 433, 448.

Illinois, as well as Michigan,[1] has adopted the Uniform Criminal Extradition Act. See Ill Stat Ann, ch 60, §§ 27, 28. Therefore the safeguards contained therein apply to proceedings to transfer a prisoner against his will under Article IV of the Interstate Agreement on Detainers.

In the instant case, defendant Duck was deprived of his right to a pretransfer hearing before being taken into custody by the Michigan authorities. Defendant asks this Court to set aside his conviction and to dismiss the charges against him with prejudice because of such violation.

Articles III(d) and IV(e) of the IAD provide for dismissal with prejudice of any charges not tried prior to the prisoner's return to the original state of imprisonment. There are no similar penalty provisions in the IAD for failure to provide a pretransfer hearing. The enforcement mechanism for the right to a pretransfer hearing is found in the Uniform Criminal Extradition Act, § 11, MCL 780.10; MSA 28.1285(10), which provides for criminal sanctions for noncompliance with the pretransfer hearing rights detailed in § 10, MCL 780.9; MSA 28.1285(9).

In *People v Browning (On Reh)*, 108 Mich App 281, 294; 310 NW2d 365 (1981), the defendant was tried and convicted on a charge which did not form the basis of the detainer and did not arise out of the same transaction, contrary to Article V(d). This Court held that the violation of the Article did not divest the trial court of jurisdiction over the subject matter of the case and that such deficiency was waived if not raised prior to or during the trial.

Challenges to extradition proceedings must be made in the asylum state. Opposition to such

[1] MCL 780.9; MSA 28.1285(9) and MCL 780.10; MSA 28.1285(10). 11 ULA (Master Ed), Uniform Criminal Extradition Act, §§ 10, 11.

extradition comes too late upon submission to the jurisdiction of the charging state. *People v Sterbins,* 32 Mich App 508, 511-512; 189 NW2d 154 (1971); *People v Berryman,* 43 Mich App 366, 369; 204 NW2d 238 (1972), *lv den* 390 Mich 801 (1973); *Pettibone v Nichols,* 203 US 192; 27 S Ct 111; 51 L Ed 148 (1906).[2]

In the instant case, since the Calhoun County Circuit Court had jurisdiction over the case, it properly accepted defendant's plea.

In light of the above, defendant's contention that he was denied the effective assistance of counsel is without merit. Had his attorney raised the issue of being deprived of a pretransfer hearing in Illinois it would not have affected the outcome of the proceedings and therefore defendant was not prejudiced by counsel's failure to raise the issue. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977); *Strickland v Washington,* — US —; 104 S Ct 2052, 2064; 80 L Ed 2d 674 (1984).

The trial court judgment is affirmed.

---

[2] See also: *Gardels v Brewer,* 190 NW2d 803 (Iowa, 1971); 31 Am Jur 2d, Extradition, §§ 64, 74; 39 Am Jur 2d, Habeas Corpus, § 76; 25 ALR4th 157, § 2[b], p 161.