*In re* BOYNTON

Docket No. 310889. Submitted October 2, 2013, at Detroit. Decided October 15, 2013, at 9:10 a.m.

An arrest warrant was issued in Georgia seeking the arrest of Malachi E. Boynton, a minor, on charges of aggravated child molestation and aggravated sodomy arising from Boynton's alleged sexual assault of a child while he was in Georgia. The Governor of Georgia then issued a requisition demand to Michigan's Governor seeking Boynton's extradition to Georgia to face the charges. The Genesee Circuit Court, Family Division, had already asserted jurisdiction over Boynton as a result of an unrelated episode of domestic violence and had placed him on probation. Boynton's probation officer sought to effectuate the extradition request. Boynton filed a petition for a writ of habeas corpus challenging the extradition request. The court, F. Kay Behm, J., denied the petition. The Court of Appeals denied Boynton's application for leave to appeal. *In re Boynton,* unpublished order of the Court of Appeals, entered August 6, 2012 (Docket No. 310889). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. *In re Boynton,* 494 Mich 852 (2013). The Supreme Court also granted the Michigan Attorney General's motion to intervene in the case.

The Court of Appeals *held*:

1. The Uniform Criminal Extradition Act (UCEA) under which the extradition request was made has been adopted in both Michigan, MCL 780.1 *et seq.*, and Georgia, Ga Code Ann 17-13-20 *et seq.* The UCEA applies to a "person" or "persons" without distinction premised on age. The applicability of the UCEA is not confined to adults. The UCEA applies to juveniles charged with delinquent behavior and permits the extradition of juveniles.

2. A juvenile adjudication clearly constitutes criminal activity because it amounts to a violation of a criminal statute, even though that violation is not resolved in a criminal proceeding.

3. The reason for a person's absence from the demanding state is irrelevant for purposes of extradition. The pertinent inquiry is whether the person whose surrender is demanded is

in fact a fugitive from justice, not whether the person consciously fled from justice in order to avoid prosecution for the crime with which the person is charged by the demanding state. "Fugitivity" is shown when the person is ascertained to be the person wanted in the demanding state and it is shown that the person was present in the demanding state at the time when the alleged offense occurred.

4. A governor's grant of extradition is prima facie evidence that the constitutional and statutorily requirements have been met. Once a governor has granted extradition, a court considering release on a writ of habeas corpus can do no more than decide whether the extradition documents on their face are in order, whether the petitioner has been charged with a crime in the demanding state, whether the petitioner is the person named in the request for extradition, and whether the petitioner is a fugitive. Information regarding an alleged offender's permanent residence is not required to be included in the documents that accompany a demand for extradition. Any alleged inaccuracies in the documents submitted with the demand for Boynton's extradition with regard to identifying Boynton's permanent residence do not render them invalid on their face.

5. Boynton's contention that his extradition to Georgia would constitute cruel and unusual punishment must be addressed by the courts of Georgia, not the courts of Michigan.

6. Boynton, a detainee awaiting extradition, has not incurred a punishment under the Eighth Amendment. Boynton has not incurred a punishment under Const 1963, art 1, § 16. Boynton's claim that the UCEA's application to him and his circumstances would constitute cruel and unusual punishment lacks merit.

Affirmed.

1. CRIMINAL LAW — EXTRADITION — APPEAL.

Challenges to extradition proceedings must be made in the asylum state; the scope of review in passing upon a writ of habeas corpus by the courts of the asylum state is generally limited to questions of identity, fugitivity, and regularity of the extradition procedure.

2. CRIMINAL LAW — EXTRADITION — UNIFORM CRIMINAL EXTRADITION ACT — JUVENILES.

The Uniform Criminal Extradition Act applies to a "person" or to "persons" without distinction premised on age; the applicability of the act is not confined to adults; the act permits the extradition of juveniles (MCL 780.1 *et seq.*).

3. JUVENILE LAW — JUVENILE ADJUDICATIONS — CRIMINAL ACTIVITY.

A juvenile adjudication constitutes criminal activity because it amounts to a violation of a criminal statute, even though the violation is not resolved in a criminal proceeding.

4. CRIMINAL LAW — EXTRADITION — FUGITIVITY.

The voluntary nature of a person's removal from the state demanding the person's extradition is irrelevant to the determination whether the person is a fugitive from justice; "fugitivity" is shown when the person is ascertained to be the person wanted in the demanding state and it is shown that the person was present in the demanding state at the time the alleged offense occurred; the reason for the absence of the person from the demanding state is irrelevant for purposes of extradition.

5. CRIMINAL LAW — EXTRADITION — UNIFORM CRIMINAL EXTRADITION ACT.

Procedural compliance is sufficient to overcome defects or inaccuracies contained within the documentation initiating extradition proceedings under the Uniform Criminal Extradition Act; Section 3 of the act sets forth the required documents, and their necessary content, that must accompany an extradition demand in order for it to be recognized by the Governor of an asylum state (MCL 780.3).

6. CRIMINAL LAW — EXTRADITION — UNIFORM CRIMINAL EXTRADITION ACT.

A governor's grant of extradition under the Uniform Criminal Extradition Act is prima facie evidence that the constitutional and statutory requirements for extradition have been met; once a governor has granted extradition, a court considering a petitioner's release on a writ of habeas corpus can do no more than decide whether the extradition documents on their face are in order, whether the petitioner has been charged with a crime in the demanding state, whether the petitioner is the person named in the request for extradition, and whether the petitioner is a fugitive (MCL 780.1 *et seq.*).

*Child Advocacy Team* (by *Terina M. Carte*) for Malachi Boynton.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *B. Eric Restuccia*, Deputy Solicitor General, and *Anica Letica*, Assistant Attorney General, for the Attorney General.

Before: BECKERING, P.J., and O'CONNELL and SHAPIRO, JJ.

PER CURIAM. Petitioner, Malachi Eric Boynton, a juvenile, appeals by leave granted the trial court's May 30, 2012, order denying his petition for a writ of habeas corpus and permitting his extradition to the state of Georgia in accordance with a governor's warrant. An issue of first impression in this case is whether the Uniform Criminal Extradition Act (UCEA), as adopted in Michigan (MCL 780.1 *et seq.*), applies to juveniles charged with delinquent behavior in another state. Because we conclude that it does and that petitioner's other claims of error lack merit, we affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner is a Michigan resident. In the summer of 2010, he spent time in Georgia with this godfather. Petitioner was 12 years old at the time. Toward the end of his stay, Georgia authorities began investigating allegations that petitioner sexually assaulted a four-year-old child. Petitioner returned home to Michigan. An arrest warrant was issued in Fulton County, Georgia. Georgia's Governor then issued a requisition demand to Michigan's Governor seeking petitioner's extradition to Georgia to face accusations of aggravated child molestation, Ga Code Ann 16-6-4,[1] associated with his alleged anal penetration of the four-year-old child. Because of petitioner's status as a juvenile, the state of Georgia sought to pursue charges against him in the juvenile court as a delinquent felon.

In November 2010, petitioner was detained in Michigan for delinquent behavior associated with an episode

---

[1] An amended petition in the Fulton County juvenile court also included the offense of aggravated sodomy, Ga Code Ann 16-6-2.

of domestic violence. Petitioner admitted that he had pushed his mother, and the Genesee Circuit Court, Family Division, asserted jurisdiction over him on February 1, 2011. The court placed petitioner on formal probation with the option of rescinding his plea and being placed on consent calendar probation if he successfully completed the terms of his probation.

In May 2011, after learning of the charges pending in Georgia, petitioner's probation officer sought to effectuate the extradition request. Efforts were made to follow through on this request, but it was not until the following spring, after petitioner violated the terms of his probation by not attending school regularly, that he was served with the extradition paperwork and that the court undertook to execute the extradition request.[2]

Counsel was appointed to represent petitioner in the extradition proceedings. Petitioner's counsel filed a petition for a writ of habeas corpus challenging the extradition request. The trial court denied the petition. This Court denied petitioner's application for leave to appeal.[3] The Michigan Supreme Court, in lieu of granting leave to appeal, remanded the matter to this Court for consideration as on leave granted.[4] The Supreme Court also granted the Michigan Attorney General's motion to intervene in the case.

## II. ANALYSIS

Petitioner raises four arguments to challenge the extradition proceedings: (1) the UCEA does not apply to juve-

---

[2] A new petition was filed with the circuit court in June 2012, arising out of another alleged incident of petitioner engaging in domestic violence.

[3] *In re Boynton*, unpublished order of the Court of Appeals, entered August 6, 2012 (Docket No. 310889).

[4] *In re Boynton*, 494 Mich 852 (2013).

niles charged with delinquent behavior; (2) even if the UCEA does apply to him, he is not a "fugitive from justice" under the act; (3) the documents used to obtain the governor's warrant contain inaccurate and untruthful pertinent information and, thus, are not in order on their face and must not be honored; and (4) enforcing the governor's warrant and extraditing him to Georgia would be cruel and unusual punishment because he is a minor.[5]

"Challenges to extradition proceedings must be made in the asylum state." *People v Duck*, 147 Mich App 534, 540; 383 NW2d 245 (1985). "The scope of review in passing upon a writ of *habeas corpus* by the courts of the custody state is generally limited to questions of identity, fugitivity, and regularity of the extradition procedure." *Williams v North Carolina*, 33 Mich App 119, 123 n 4; 189 NW2d 858 (1971), citing *Drew v Thaw*, 235 US 432; 35 S Ct 137; 59 L Ed 302 (1914). However, the interpretation of a statute presents a question of law that this Court reviews de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004). Furthermore, to the extent petitioner raises questions of constitutional law on appeal, we generally review such issues de novo. *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011).

### A. APPLICABILITY OF THE UCEA TO JUVENILES CHARGED WITH DELINQUENT BEHAVIOR

Petitioner raises an issue of first impression in Michigan, contending that the UCEA does not and, as mani-

---

[5] Petitioner also addresses the Interstate Compact for Juveniles (ICJ), MCL 3.692, solely to argue that it is inapplicable under the circumstances presented and does not serve as an alternative ground upon which to affirm the trial court. Because we conclude that the extradition proceedings are proper under the UCEA, we need not address the applicability of the ICJ.

fested by its chosen language, was not intended to apply to juveniles charged with delinquent behavior. We disagree.

At the outset, it is noted that Michigan, in addition to "[a]lmost all states," has adopted the UCEA. Anno: *Extradition of Juveniles*, 73 ALR3d 700, 706, § 3. In Michigan, the relevant statutory provisions include the following:

> Subject to the provisions of this act, the provisions of the constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States *any person* charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state. [MCL 780.2 (emphasis added).]

As noted in MCL 780.28, "The provisions of this act shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those states which enact it." The state of Georgia has also adopted the UCEA. See Ga Code Ann 17-13-20.

Discussions of the UCEA have recognized as a starting point the Extradition Clause of the United States Constitution, specifically, US Const, art IV, § 2, cl 2, which states:

> *A Person* charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime. [Emphasis added.]

Congress implemented this constitutional provision in 18 USC 3182, which states:

Whenever the executive authority of any State or Territory demands *any person* as a fugitive from justice, of the executive authority of any State, District, or Territory to which *such person* has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging *the person* demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence *the person* so charged has fled, the executive authority of the State, District, or Territory to which *such person* has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged. [Emphasis added.]

The United States Supreme Court in *Michigan v Doran*, 439 US 282, 288-289; 99 S Ct 530; 58 L Ed 2d 521 (1978) (citations omitted), explained the relationship of these various provisions:

Whatever the scope of discretion vested in the governor of an asylum state, the courts of an asylum state are bound by Art IV, § 2, by § 3182, and, where adopted, by the Uniform Criminal Extradition Act. A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met.

Analysis of the relevant constitutional and statutory language is consistent with the rules of statutory interpretation. *In re Request for Investigative Subpoena*, 256 Mich App 39, 45-46; 662 NW2d 69 (2003). "If the language of a statute is clear, no further analysis is necessary or allowed to expand what the Legislature clearly intended to cover." *People v Monaco*, 474 Mich 48, 54; 710 NW2d 46 (2006) (quotation marks and citation omitted).

In this instance, the relevant language indicates the applicability of the statutes to a "person" or "persons" without distinction premised on age. "It is a settled rule of statutory construction that, unless otherwise defined in a statute, statutory words or phrases are given their plain and ordinary meanings." *Id.* at 55 (quotation marks and citation omitted), citing MCL 8.3a. The plain and ordinary meaning of "person" is "a human being; a man, woman, or child." *Random House Webster's College Dictionary* (2005); see also Black's Law Dictionary (9th ed) (defining "person" as "[a] human being"). The act does not define the term "person" and does not contain other provisions limiting its scope to adults. As a consequence, in adherence to the rules of statutory interpretation, we conclude that the Legislature intended to use the broad and encompassing term "person" through its election to not limit the applicability of the provision by using qualifying language such as "adult." Under general principles of statutory interpretation, the applicability of the UCEA is not confined to adults and the UCEA permits the extradition of juveniles.

Although there is limited caselaw regarding the applicability of the UCEA to juveniles, what exists is consistent with the above interpretation premised on the statutory language. As an example, the annotation at 73 ALR3d 700 provides an overview of caselaw pertaining to the extradition of juveniles. In general, it is suggested:

> The constitutional provision and the legislation governing extradition make no special provisions for juveniles, and the cases, at least by implication if not expressly, recognize that juveniles may be extradited the same as adults. Moreover, even though special criminal proceedings may otherwise be required for juveniles, it has been held that such special proceedings are not required when extra-

diting juveniles. . . . [I]t has been held that the power of a state to try a juvenile is not affected by the manner of his return to another state. . . .

It has been said that where a juvenile is contesting his extradition, the court's inquiry is limited to a determination of the individual's identity, his status as a fugitive from justice, whether a proper demand for his return has been made, and whether he is charged with a crime in the demanding state. However, this applies to extradition under the general extradition acts. . . .

Because the treatment of a juvenile offender as a "juvenile delinquent" is not considered a criminal proceeding, per se, it has been argued that where, under the laws of the demanding state, a juvenile offender may be treated as a juvenile delinquent, the juvenile fugitive is not charged with a crime as required for extradition and therefore is not subject to extradition. However, it has been held that where the demanding state's request cites a criminal charge, the manner in which the demanding state treats its juvenile offenders is not a proper subject for inquiry in the asylum state's extradition proceedings. Moreover, the fact that a juvenile offender can only be tried as a juvenile delinquent in the *asylum* state has also been held to have no effect upon the propriety of extraditing a juvenile.

\* \* \*

In conclusion, the cases reveal very little difference between the treatment of a juvenile in extradition proceedings and that of an adult where the process is being conducted under the general extradition statutes. Occasionally, a noteworthy difference has appeared in a case, but these cases have not developed any following. [73 ALR3d 700, 703-705, § 2[a] (citations omitted).]

A review of the caselaw in other jurisdictions is consistent with this analysis. For example, in *Ex parte Jetter*, 495 SW2d 925 (Tex Crim App, 1973), a Texas appellate court found "no limitation in the Uniform Criminal Extradition Act excluding minors from its

operation." *Id.* Similarly, in *In re O M*, 565 A2d 573, 583 (DC App, 1989), the District of Columbia Court of Appeals opined:

> Although a juvenile petition does not technically charge a crime, the rendition procedures established by the Compact for juveniles charged with delinquency are designed to be essentially the same as those long established for the extradition of adults charged with crimes.

Specifically, the court determined:

> The Constitution does not preclude this congruence of procedures. The Extradition Clause itself makes no distinction between juveniles and adults, providing simply that "[a] Person charged in any State . . . who shall flee from Justice, and be found in another State, shall on Demand . . . be delivered up, to be removed to the State having Jurisdiction of the Crime." We agree with the Supreme Judicial court of Massachusetts that the Constitution "does not contemplate any difference in treatment for criminal offenders based on age." [*Id.* at 583 n 28, quoting US Const, art IV, § 2, cl 2, and citing *A Juvenile*, 396 Mass 116, 118 n 2; 484 NE2d 995 (1985).]

See also *State v J M W*, 936 So 2d 555, 560 (Ala Crim App, 2005). The Supreme Court of Montana has also addressed this issue in *Coble v Magone*, 229 Mont 45, 49-50; 744 P2d 1244 (1987), which stated, in relevant part:

> A review of the Uniform Criminal Extradition Act shows that juveniles are not expressly included in the act, but it also shows that juveniles are not expressly excluded. The legislative history shows that juveniles were not intentionally omitted.
>
> * * *
>
> We hold that the failure of the Legislature to include, or specifically exclude, juveniles is of no aid to [the petitioner] in this case. . . .

> The Attorney General of the State of Montana has also recognized that juveniles are not to be exempted from application of the Uniform Criminal Extradition Act . . . . In evaluation of whether juveniles could be properly extradited, the Attorney General appropriately concluded that the majority of "[j]urisdictions allow extradition of juveniles if they are charged with a crime in the demanding state." [Citation omitted.]

This is not to suggest that all caselaw is consistent. As discussed in 73 ALR3d 700, 705, § 2[b]:

> [W]here the demanding state charged its juvenile offenders with juvenile delinquency only, it has been argued that the juvenile is not charged with a crime and is therefore not subject to extradition. This argument has been successful in one court, and may be successful elsewhere, although the weight of authority is otherwise. [Citations omitted.]

Premised on a review of available decisions and an analysis of those decisions, petitioner's assertion that he is not subject to extradition because the UCEA is inapplicable to juveniles is unavailing. We hold that the phrase "any person" in the UCEA means exactly what it says and does not exclude juveniles.

Petitioner argues that other select words in the UCEA indicate that it was not intended to apply to juvenile delinquency proceedings. Specifically, petitioner argues that the UCEA stands for "Uniform *Criminal* Extradition Act" and expressly provides that it is applicable when a person is charged in another state with "treason, felony, or other crime . . . ." Thus, because a delinquency proceeding is not a "criminal" proceeding, the UCEA cannot apply. Furthermore, because MCL 780.14 addresses committing the accused to the "county jail" to await a requisition and does not have any provision for detention in a juvenile facility, the UCEA applies only to adults.

As discussed in 73 ALR3d 700, 704, § 2[a], petitioner argues: "Because the treatment of a juvenile offender as a 'juvenile delinquent' is not considered a criminal proceeding, per se, it has been argued that where, under the laws of the demanding state, a juvenile offender may be treated as a juvenile delinquent, the juvenile fugitive is not charged with a crime as required for extradition and therefore is not subject to extradition." Yet, contrary to this assertion, and as noted in the ALR section:

> [I]t has been held that where the demanding state's request cites a criminal charge, the manner in which the demanding state treats its juvenile offenders is not a proper subject for inquiry in the asylum state's extradition proceedings. Moreover, the fact that a juvenile offender can only be tried as a juvenile delinquent in the *asylum* state has also been held to have no effect upon the propriety of extraditing a juvenile. [73 ALR3d 700, 704, § 2[a] (citations omitted).]

Once again, decisions from other jurisdictions provide guidance. An Illinois appellate court has determined, in ascertaining a juvenile's right to counsel:

> Although proceedings under the Juvenile Court Act are not criminal, the filing of a delinquency petition is criminal in nature because it requires proof beyond a reasonable doubt. Similarly, the filing of a delinquency petition is analogous to the filing of a criminal complaint . . . . [*People v Fleming*, 134 Ill App 3d 562, 569; 89 Ill Dec 478; 480 NE2d 1221 (1985) (citation omitted).]

Other jurisdictions have permitted extradition, finding that the nature of the charging procedure used by the demanding state is irrelevant to the issue of a juvenile's extradition. See *Ex parte Jetter*, 495 SW2d at 925. In *Jetter*, the court determined it unnecessary to address the issue whether a juvenile was required to be certified as an adult to stand trial in the

demanding state because "once she is extradited [it] is a question for the courts of the [demanding state] to determine and not one for the courts of the [asylum state]." *Id.* Similarly, as discussed in *State v Cook*, 115 Wash App 829, 832; 64 P3d 58 (2003), "Cases under the Uniform Criminal Extradition Act . . . have . . . found the demanding state's determination of juvenile status controlling." In *In re Robert*, 122 RI 356, 357-359; 406 A2d 266 (1979), the Rhode Island Supreme Court held unconstitutional a statute that provided that an individual under the age of 18 could not be extradited to another state unless a family court judge had initially found that the juvenile would be treated as an adult if the out-of-state offense had been committed in the asylum state.

The issue was also discussed in detail in *A Juvenile*, 396 Mass at 119-121 (citations omitted):

> The petitioners next argue that, because they are minors, even if they are subject to rendition to Maryland under the Uniform Act, they are entitled to a probable cause hearing in Massachusetts before they can be returned. This contention requires a review of the nature of the rendition proceeding in an asylum State. A rendition proceeding conducted in the asylum State is limited. Once the Governor of an asylum State has ordered rendition, a judge considering release on a writ of habeas corpus can only decide "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." "If the documents submitted by a demanding State demonstrate that 'a judicial officer or tribunal there had found probable cause, Massachusetts would not need to find probable cause anew, nor would it need to review the adequacy of the [demanding State's] determination.' "

This is consistent with the United States Supreme Court's discussion of the history of interstate extradition. Specifically:

> Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution. The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.
>
> Near the turn of the century this Court . . . concluded:
>
>> While courts will always endeavor to see that no such attempted wrong is successful, on the other hand, care must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt. [*Doran*, 439 US at 288 (citations omitted).]

In Michigan, this Court has determined that a

> juvenile adjudication clearly constitutes criminal activity because it amounts to a violation of a criminal statute, even though that violation is not resolved in a criminal proceeding. As this Court has noted, juvenile proceedings are closely analogous to the adversary criminal process. [*People v Anderson*, 298 Mich App 178, 182; 825 NW2d 678 (2012) (citations and quotation marks omitted).]

Although the law of the asylum state is irrelevant in the determination regarding extradition, it is worth noting that the crime petitioner is charged with in Georgia, if he were convicted, would constitute criminal activity even if adjudicated through juvenile proceedings. Based on this Court's recognition of the criminal nature of the activity regardless of the forum for prosecution, when viewed in conjunction with the determinations of other jurisdictions, petitioner's claim that his being charged

by the demanding state in a juvenile proceeding precludes the propriety of his extradition is unavailing.

Accordingly, we conclude that the UCEA applies to juveniles charged with delinquent behavior.

### B. FUGITIVE FROM JUSTICE

Petitioner next contends that the UCEA does not apply to him because the UCEA pertains to "fugitives from justice" and he has not "fled from justice" as set forth in MCL 780.2. Petitioner emphasizes that he left Georgia following a brief vacation to return to his home state of Michigan and that his travel was dictated by his mother.

Black's Law Dictionary (9th ed) defines the term "fugitive" in the following manner:

> 1. A person who flees or escapes; a refugee. 2. A criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or by hiding. See 18 USCA § 1073. — Also termed (in sense 2) *fugitive from justice*.

Yet, in terms of extradition, the term "fugitive" has historically been subject to a more restricted application. As discussed by this Court in *In re Simmans*, 54 Mich App 112, 116; 220 NW2d 311 (1974), the voluntary nature of a person's removal from the demanding state is irrelevant. Relying, in part, on *Appleyard v Massachusetts*, 203 US 222, 227; 27 S Ct 122; 51 L Ed 161 (1906), this Court stated:

> The fact that the alleged fugitive from justice left the state with the consent or knowledge of the state authorities or of complainant does not affect his status as a fugitive from justice, where he refuses to return or there is a second indictment or complaint.

* * *

In conformity with the decisions in other states, we hold that "fugitivity" is shown when, as in the case now before us, defendant is ascertained to be the person wanted in the demanding state and was present in the demanding state at the time the alleged offense occurred.

So that the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he consciously fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding state. A person charged by indictment or by affidavit before a magistrate with the commission within a state of a crime covered by its laws, and who, after the date of the commission of such crime leaves the state—no matter for what purpose or with what motive, nor under what belief— becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another state must be delivered up by the governor of such state to the state whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the governor of the state from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any state. [*In re Simmans*, 54 Mich App at 116-117 (citations, emphasis, and quotation marks omitted).]

Although caselaw exists to the contrary, see, e.g., *Kittle v Martin*, 166 Ga 250; 142 SE 888 (1928), Michigan courts and the United States Supreme Court have determined that the reason for the absence of the individual from the demanding state is irrelevant for purposes of extradition. Therefore, petitioner's contention in this appeal that he does not qualify as a fugitive for purposes of extradition is without merit.

C. VALIDITY OF EXTRADITION WARRANT

Petitioner alleges that one of the extradition documents contained an inaccuracy because it indicated that he "resides" in Georgia (and lives somewhere in Michigan under the custody and control of his mother), when, in fact, he resides in Michigan. Petitioner contends that his residency status is important and relevant information because Michigan's governor "obviously thought he was returning a Georgia resident back to his home state." According to petitioner, the extradition warrant should be deemed invalid because false information was relied on to obtain it.

Contrary to petitioner's position, caselaw suggests that procedural compliance is sufficient to overcome defects or inaccuracies contained within the documentation initiating extradition proceedings because of the limited authority and discretion of the asylum state. As discussed by the *Doran* Court:

> Whatever the scope of discretion vested in the governor of an asylum state, the courts of an asylum state are bound by Art IV, § 2, by § 3182, and, where adopted, by the Uniform Criminal Extradition Act. A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents *on their face* are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable. [*Doran*, 439 US at 288-289 (citations omitted and emphasis added).]

Use of terms such as "on their face" implicitly suggests that any in-depth inquiry into the factual premises contained within the documents is precluded. As noted

earlier by the Michigan Supreme Court in addressing a habeas corpus proceeding challenging an extradition, "Manifestly the field of inquiry into which the courts may enter is very much circumscribed." *In re Ray*, 215 Mich 156, 162; 183 NW 774 (1921). Citing as authoritative a ruling of the Pennsylvania Supreme Court, our Supreme Court ruled, *id.* at 165-166:

> In *Commonwealth* v. *Supt. Co. Prison*, 220 Pa. 401 [405-406; 69 A 916 (1908)], the court, after a review of the authorities, said:
>
>> If the jurisdictional facts authorizing the extradition of the accused appear from the papers, the court on a hearing in *habeas corpus* proceedings will not go into the merits of the case, or determine the guilt or innocence of the accused. It is the duty of the asylum State to protect the liberty of its citizens and not permit interstate extradition proceedings to be made a pretext for removing them to another jurisdiction for a purpose other than that within the intendment of the Federal Constitution. On the other hand, it is equally the duty of the State to aid in the punishment of crime committed in another State, by the prompt extradition of the guilty person found within its jurisdiction as a fugitive from justice. No State can be the asylum of a fugitive from justice, and hence it should promptly honor the requisition of a sister State for the extradition of a prisoner legally accused of committing an offense against the laws of that State. If the court on *habeas corpus* inquires into the merits of the charge against the prisoner or into the motives which inspired the prosecution in the demanding State, it exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals. The mandate of the constitution requires 'a person charged in any State with a crime' to be delivered by the asylum State to the State whose laws he has violated. That State alone can determine the guilt or innocence of the offending party. The theory and the intention of the constitutional and statutory provisions are that the

offender shall be compelled to submit himself for trial to the courts of the State in which the offense was committed, and hence it would be usurpation of authority for the courts of another State to undertake to determine the question of his guilt in a *habeas corpus* proceeding. Assuming that the demanding State has complied with the requirements of the Federal Constitution and the act of congress in making the requisition for the accused, it would be equally an unconstitutional exercise of power for the court of the asylum State to inquire into the motives of prosecution, instituted in conformity with the laws of the demanding State, and release the offender and thereby prevent his extradition for trial in the latter State.

These authorities and many others which might be cited demonstrate that the rendition warrant of the governor cannot be nullified by the courts on *habeas corpus* proceedings by sustaining such claims as are here made. The Federal Constitution as interpreted by the courts precludes such a result. There was much foresight in adopting this clause of the Constitution, and there has been much wisdom in its proper interpretation. If we should accept the theory of plaintiff's counsel this State would soon become the asylum of the murderers and criminal classes of the southern States who could with safety here find immunity from rendition, immunity from prosecution for their crimes. Such a result our forefathers wisely prevented.

MCL 780.3, sets forth the required documents, and their necessary content, that must accompany an extradition demand in order for it to be recognized by the Governor. Such documents include a governor's requisition under the seal of the demanding state, a prosecutor's application for requisition, verification by affidavit of the application, an executive warrant, and the indictment, information, or affidavit. MCL 780.3. Information regarding the offender's permanent residence is not required to be included in those documents. Any alleged inaccuracies within the documents associated

with identifying petitioner's permanent residence does not render them invalid on their face.

### D. CRUEL AND UNUSUAL PUNISHMENT

Finally, petitioner, now fifteen years old, seeks to avoid extradition by suggesting that his status as a minor and removal from his family would constitute cruel and unusual punishment.[6] According to petitioner, his extradition at "the tender age of 15" is punishment for his alleged violation of Georgia law.

We conclude that petitioner's contention that his extradition to Georgia would constitute cruel and unusual punishment is a claim that must be addressed by the courts of the state of Georgia, not the courts of Michigan. See *Sweeney v Woodall*, 344 US 86, 89-90; 73 S Ct 139; 97 L Ed 114 (1952) (holding that a fugitive who alleged that future punishment by the state from which he had fled would be cruel and inhuman but who made no showing that relief was unavailable to him in the courts of that state, should exhaust all available remedies in courts of said state and, thus, the district court in the asylum state properly dismissed the petition for a writ of habeas corpus); *New Mexico, ex rel Ortiz v Reed*, 524 US 151, 153; 118 S Ct 1860; 141 L Ed 2d 131 (1998) ("In case after case we have held that claims relating to . . . what may be expected to happen in the demanding State when the fugitive returns, are issues that must be tried in the courts of that State, and not in those of the asylum State."). As discussed in *In re Walton*, 99 Cal App 4th 934, 945-946; 122 Cal Rptr 2d 87 (2002) (citation omitted):

---

[6] The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII. Our Michigan Constitution prohibits punishment that is "cruel or unusual." Const 1963, art 1, § 16.

> The Supreme Court, with other state and federal courts, has . . . consistently held that even alleged constitutional violations that might result from the extradition of a fugitive may not be raised in the asylum state courts. It is simply not for officials in the asylum state to make determinations, beyond those authorized by the Supreme Court, which affect a demanding state's constitutional right to obtain custody of fugitives from its justice.

To the extent that petitioner argues that his detention in the state of Michigan during "this extradition situation" is punishment for his alleged violation of Georgia law, the Supreme Court of Tennessee has recognized that "virtually all courts . . . hold that a party contesting extradition through habeas corpus may not raise issues that involve possible constitutional violations committed by the asylum state." *State ex rel Sneed v Long*, 871 SW2d 148, 151 (Tenn, 1994); see also *State ex rel DeGidio v Talbot*, 311 Minn 426; 250 NW2d 169 (1977) (asylum state declined to address contentions that delay in commencing extradition proceeding violated prisoner's right of due process and that placing detainer against him resulted in cruel and unusual punishment). Nonetheless, petitioner cannot establish that the circumstances of his detention rise to the level of a constitutional violation.

With respect to a violation of the Eighth Amendment of the United States Constitution, the United States Supreme Court has emphasized that the Eighth Amendment's prohibition only applies to persons who are subjected to "punishment" after the state has secured an adjudication of guilt:

> The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees. Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punish-

ment may not be "cruel and unusual" under the Eighth Amendment. The Court recognized this distinction in *Ingraham* v. *Wright*, 430 U.S. 651, 671-672, n. 40 [97 S Ct 1401; 51 L Ed 2d 711 (1977)]:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. See *United States* v. *Lovett*, 328 U.S. 303, 317-318 [66 S Ct 1073; 90 L Ed 1252 (1946)] . . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment. [*Bell v Wolfish*, 441 US 520, 535 n 16; 99 S Ct 1861; 60 L Ed 2d 447 (1979).]

Petitioner, a detainee awaiting extradition, has not incurred a punishment under the Eighth Amendment. See *id.*; see also *Lynch v Cannatella*, 810 F2d 1363, 1375 (CA 5, 1987) ("[T]he eighth amendment prohibition against cruel or unusual punishment is not applicable to cases in which the plaintiffs were not in custody as a result of having been convicted of a crime."); *Baker v Putnal*, 75 F3d 190, 198 (CA 5, 1996) ("Pre-trial detainees may not bring a cause of action based on the Eighth Amendment. . . . It protects only those who have been convicted."); *Cavalieri v Shepard*, 321 F3d 616, 620 (CA 7, 2003) ("The Eighth Amendment does not apply to pretrial detainees . . . .").

As for a claim of cruel or unusual punishment under the Michigan Constitution, petitioner's claim fails on the same basis. In 1925, our Supreme Court explained that the Michigan Constitution's provision that "cruel or unusual punishment shall not be inflicted," Const 1908, art 2, § 15, had "reference only to punishments

inflicted after convictions of crimes." *Smith v Wayne Probate Judge*, 231 Mich 409, 416; 204 NW 140 (1925). The phraseology from article 2, § 15 of the Michigan Constitution of 1908 is repeated verbatim in article 1, § 16 of the Michigan Constitution of 1963. *People v Lorentzen*, 387 Mich 167, 172 n 3; 194 NW2d 827 (1972). Furthermore, this Court has defined "punishment" for purposes of article 1, § 16 of the Michigan Constitution of 1963 as "the deliberate imposition, by some agency of the state, of some measure intended to chastise, deter or discipline *an offender.*" *In re Ayres*, 239 Mich App 8, 14; 608 NW2d 132 (1999) (quotation marks and citation omitted; emphasis added); see also *People v Dipiazza*, 286 Mich App 137, 147; 778 NW2d 264 (2009). A person cannot be considered an offender unless he or she has been adjudicated as such with due process of law. See *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010) (stating that criminal defendants are presumed innocent). Thus, petitioner has not incurred a punishment under article 1, § 16 of the Michigan Constitution of 1963.

Accordingly, petitioner's claim that the UCEA's application to him and his circumstances would constitute cruel and unusual punishment lacks merit.

Affirmed.

BECKERING, P.J., and O'CONNELL and SHAPIRO, JJ., concurred.