*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALBERT JOSEPH FRATARCANGELI,

        Plaintiff-Appellee/Cross-
        Appellant/Cross-Appellee,

v

SARAH MYERS, MICHAEL SUMMERS, JAMES
BOWIE, WILLIAM PERRY, DAVID WEAVER III,
BRANDON HALL, and SAMUEL JAMES,

        Defendants-Appellants/Cross-
        Appellees,

and

OAKLAND COUNTY,

        Defendant/Cross-Appellee,

and

PHILIP DUROCHER and DANIELLE VEATCH,

        Defendants/Cross-Appellants/Cross-
        Appellees.

UNPUBLISHED
April 9, 2020

No. 347390
Oakland Circuit Court
LC No. 2018-166053-CZ

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

-1-

Defendants, Sarah Myers, Michael Summers, James Bowie, William Perry, David Weaver III, Brandon Hall, and Samuel James, appeal as of right the order of the trial court granting in part and denying in part their motion for summary disposition of plaintiff's amended complaint. Defendants Philip Durocher and Danielle Veatch cross-appeal from the same order of the trial court challenging the trial court's partial denial of their motion for summary disposition. Plaintiff cross-appeals from the same order and also challenges the trial court's earlier order dismissing his initial complaint. We affirm in part and reverse in part.

## I.   FACTS

This case arises from plaintiff's arrest on January 28, 2018. On that day, Oakland County Sheriff's Deputy Sarah Myers saw plaintiff driving erratically and began to follow his vehicle. The dashcam video from her patrol vehicle shows Deputy Myers following plaintiff for approximately five minutes and four miles, during which time plaintiff repeatedly swerved onto the white line on the right side of the lane, then activated his right turn signal and passed a road and some driveways before turning right into the parking lot of a McDonalds. According to Deputy Myers, plaintiff was driving as slowly as 30 miles per hour where the speed limit was 55 miles per hour.

Deputy Myers followed plaintiff into the parking lot, stopped her patrol car behind plaintiff's car and activated the emergency lights, then approached his car. According to the dashcam video, Deputy Myers asked for plaintiff's driver's license, registration, and proof of insurance. Plaintiff, who was 64 years old, got out of the car to look for the items in the back seat, then dropped his license on the ground and struggled to pick it up. He returned to the front seat where he located his registration, but could not locate his proof of insurance.

Deputy Myers asked plaintiff if he was taking any medication, and he responded that he was taking "lots of medications." Plaintiff then explained that he was taking medication for diabetes, and later added that he was taking blood pressure medication. He was unable to provide the names of any of the medication, though he later said he was taking insulin. When questioned by Deputy Myers, plaintiff stated that he was on his way home from a friend's house but he could describe only vaguely where the friend lived. The officer asked plaintiff whether he was lost, which he denied, and asked him several times whether he needed to check his blood sugar level, which he also denied. Deputy Myers reported that plaintiff's "eyes were bloodshot, his pupils were pin points and [plaintiff] had a brown ring mark around his mouth," and was unsteady on his feet.

Deputy Myers then asked plaintiff to perform several sobriety tests; he was able to recite the alphabet quickly, but struggled somewhat in reciting it slowly; he was able to count from 85 to 97 both forward and backward. When asked if he was able to walk, plaintiff said that he could walk "fine," although he had bad knees. Plaintiff did not inform the officer that he used a cane to walk. Plaintiff then struggled to walk in a line heel to toe, and was unable to maintain his balance while standing lifting one foot without holding onto his car. During these tests, Oakland County Sherriff's Deputy Michael Summers arrived to assist Myers; the dashcam video shows Summers searching plaintiff's vehicle.

When plaintiff was unable to successfully perform the sobriety tests, Deputy Myers placed him under arrest and transported him to the police substation where she prepared a search warrant for his blood test. She obtained a warrant and transported plaintiff to a hospital where his blood was drawn. The blood test indicated that plaintiff had not consumed any alcohol. Deputy Myers then transported plaintiff to the Oakland County Jail where he was held for approximately eight hours, for a total time in custody of 11 hours and 24 minutes, until the officers believed that the effects of any substances would have worn off. He was then released. The result of the blood test that was later received did not demonstrate the presence of any illegal substances.

Plaintiff initiated this action alleging false arrest and false imprisonment against Deputy Myers, alleging cruel and unusual punishment against unknown defendants identified as John Doe and Jane Doe, alleging violation of the Freedom of Information Act (FOIA) against Oakland County, and alleging counts of deprivation of rights under 42 USC § 1983 against Deputy Myers, the Doe defendants, and Oakland County. Oakland County moved for summary disposition of the complaint under MCR 2.116(C)(8), and Deputy Myers moved for summary disposition under MCR 2.116(C)(7).

The trial court granted the motions and dismissed all counts of the complaint. With respect to the claim of false imprisonment and false arrest against Deputy Myers, the trial court found that the officer was entitled to governmental immunity because she was acting within the scope of her authority as a deputy when she stopped and arrested plaintiff, the actions were discretionary and not ministerial, and her actions were undertaken in good faith without malice. The trial court further found that Deputy Myers had probable cause to stop and to arrest plaintiff. The trial court dismissed the count of the complaint against Oakland County alleging a FOIA violation on the ground of mootness, finding that the request had been answered and that a fine under the FOIA was not warranted. The trial court also dismissed plaintiff's claim under 42 USC § 1983 against Myers and Oakland County, finding that Deputy Myers was entitled to qualified governmental immunity and that plaintiff had failed to state a claim against Oakland County by failing to allege an official policy or custom of Oakland County that deprived him of a constitutional right.

The trial court permitted plaintiff to amend his complaint. Plaintiff filed his First Amended Complaint naming as defendants Deputy Myers, Deputy Summers, Oakland County Sheriff's Deputies James Bowie, William Perry, David Weaver III, Brandon Hall, and Samuel James, and medical personal contracted to Oakland County, Philip Durocher, MD, and Danielle Veatch, LPN, whom plaintiff alleged were responsible for his care while he was under arrest. Plaintiff's amended complaint alleged against all defendants counts of false imprisonment, cruel and/or unusual punishment, and deprivation of rights under 42 USC § 1983.

Defendants Myers, Summers, Bowie, Perry, Weaver, Hall, and James (the non-medical defendants) moved for summary disposition of the amended complaint under MCR 2.116(C)(7), and defendants Durocher and Veatch moved for summary disposition under MCR 2.116(C)(8). The trial court dismissed as to all defendants Count I of the amended complaint alleging false imprisonment. The trial court dismissed on the ground of governmental immunity as to all defendants except Durocher and Veatch Count II of the amended complaint alleging cruel and unusual punishment under the Michigan Constitution. The trial court dismissed as to all defendants the portion of Count III of the amended complaint claiming deprivation of constitutional rights under 42 USC § 1983 that related to the allegation of false imprisonment. The

trial court denied defendants' motions to dismiss the portion of Count III of the amended complaint in which plaintiff claimed under 42 USC § 1983 that defendants subjected him to cruel and unusual punishment.

Defendants Myers, Summers, Bowie, Perry, Weaver, Hall, and James claimed an appeal to this Court from the trial court's order, and defendants Durocher and Veatch filed a cross-appeal from the same order. Plaintiff also filed a cross-appeal, challenging the trial court's grant of summary disposition as to all but the remaining claims, and also challenging the trial court's earlier order granting Deputy Myers and Oakland County summary disposition of plaintiff's initial complaint.

## II. DISCUSSION

### A. THE NON-MEDICAL DEFENDANTS

Defendants Myers, Summers, Bowie, Perry, Weaver, Hall, and James contend that the trial court erred by denying their motion under MCR 2.116(C)(7) for summary disposition of plaintiff's claim under 42 USC § 1983 that they inflicted cruel and unusual punishment upon him. We agree.

We review de novo a trial court's decision to grant or deny summary disposition. *Ray v Swager*, 501 Mich 52, 61-62; 903 NW2d 366 (2017). A motion for summary disposition under MCR 2.116(C)(7) asserts that the claim is barred by "release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." MCR 2.116(C)(7). In considering a motion under MCR 2.116(C)(7), we accept the contents of the complaint as true unless contradicted by the documentation submitted by the moving party, and consider any affidavits, depositions, admissions, or other documentary evidence submitted. *McLean v McElhaney*, 289 Mich App 592, 597; 798 NW2d 29 (2010). If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether the claim is barred is an issue of law for the Court. *Goodhue v Dep't of Transp*, 319 Mich App 526, 530; 904 NW2d 203 (2017).

### 1. 42 USC § 1983

42 USC § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

A claim under 42 USC § 1983 provides a remedy when an individual's federal constitutional rights have been violated. *Holeton v Livonia*, 328 Mich App 88, 94; 935 NW2d 601 (2019). Section 1983 does not provide substantive rights, but instead provides the mechanism for enforcing rights ensured by the Constitution and laws of the United States. *York v Detroit (After Remand)*, 438 Mich 744, 757-758; 475 NW2d 346 (1991). To prevail on a claim under 42 USC § 1983, a plaintiff must establish the deprivation of a right secured by the Constitution or laws of the

-4-

United States caused by a person acting under color of state law. *Morden v Grand Traverse Co*, 275 Mich App 325, 332; 738 NW2d 278 (2007).

In this case, plaintiff's claim under 42 USC § 1983 is premised on his allegation that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment. US Const, Am VIII; *Morden*, 275 Mich App at 332. The Eighth Amendment's prohibition against cruel and unusual punishment is violated when a prison official is deliberately indifferent to a substantial risk of harm to an inmate. *Johnson v Wayne Co*, 213 Mich App 143, 152; 540 NW2d 66 (1995). A prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, and therefore violates the Eighth Amendment. *Estelle v Gamble*, 429 US 97, 104; 97 S Ct 285; 50 L Ed 2d 251 (1976). Cruel and unusual punishment as prohibited by the Eighth Amendment may include the denial of medical treatment, *id*., and also when medical treatment is provided but is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness . . . ." *Rogers v Evans*, 792 F2d 1052, 1058 (CA 11, 1986).

To establish that an official acted with deliberate indifference to a serious medical need of a prisoner, the plaintiff must show that (1) the deprivation alleged was, objectively, sufficiently serious, and that (2) the official had a sufficiently culpable state of mind, meaning one of deliberate indifference. *Farmer v Brennan*, 511 US 825, 834; 114 S Ct 1970; 128 L Ed 2d 811 (1994). Thus, a claim that denial of medical treatment rose to the level of cruel and unusual punishment has both an objective and a subjective component. *Morden*, 275 Mich App at 334. The objective component requires the plaintiff to show that his or her medical needs were sufficiently serious. *Id*. A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Smith v City of Westland*, 158 Mich App 132, 136; 404 NW2d 214 (1986) (quotation marks and citation omitted). The subjective component requires the plaintiff to demonstrate that the official was deliberately indifferent to the plaintiff's serious medical needs. *Morden*, 275 Mich App at 334. Deliberate indifference means that the defendant must have either "intentionally denied or unreasonably delayed treatment of a discomfort-causing ailment or willfully failed to provide prescribed treatment without medical justification." *Tobias v Phelps*, 144 Mich App 272, 277-278; 375 NW2d 365 (1985).

A violation of the Eighth Amendment's prohibition against cruel and unusual punishment does not occur merely because a prisoner does not receive adequate medical treatment, however. Rather, "an inadvertent failure to provide adequate medical care" is not actionable and a "complaint that a physician has been negligent in diagnosing and treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 US at 105-106. Also, it is not enough for a plaintiff to show that a substantial risk of harm was obvious and that a reasonable prison official would have noticed it. *Farmer*, 511 US at 841-842. As a result, neither negligence nor gross negligence rise to the level of deliberate indifference for Eighth Amendment purposes, see *id*. at 835-836, nor is medical malpractice sufficient to demonstrate deliberate indifference. *Estelle*, 429 US at 106. Rather, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Winkler v Madison County*, 893 F3d 877, 891 (2018) (quotation marks

-5-

and citations omitted). Further, a prison official is not liable if he or she acted reasonably in response to a substantial risk of harm, even if the harm ultimately is not averted. *Jackson v Detroit*, 449 Mich 420, 431; 537 NW2d 151 (1995).

We also observe that the Eighth Amendment's prohibition against cruel and unusual punishment applies only to persons who are subjected to punishment after the state has adjudicated that person as guilty, and does not apply to pretrial detainees. *In re Boynton*, 302 Mich App 632, 653; 840 NW2d 762 (2013). Similarly, the prohibition against cruel or unusual punishment under the Michigan Constitution does not apply to pretrial detainees. *Id*. at 654-655. Nonetheless, pretrial detainees are entitled to the same care as prison inmates under the Fourteenth Amendment's substantive Due Process Clause. *Morden*, 275 Mich App 333. The Fourteenth Amendment "affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Jackson*, 449 Mich at 430. The same standard, deliberate indifference, applies to both convicted prisoners and pretrial detainees. *Morden,* 275 Mich App at 333. Thus, a pretrial detainee's due process claim, like a prisoner's cruel and/or unusual punishment claim, requires the showing of deliberate indifference to a prisoner's serious medical needs. Here, plaintiff was a pretrial detainee and thus was entitled to medical care to the same extent as a prisoner.

To summarize, to prevail on a claim under 42 USC § 1983, a plaintiff must establish that he or she suffered (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Morden*, 275 Mich App at 332. A prison official's deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain, and therefore violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle*, 429 US at 104. Although the Eighth Amendment's prohibition against cruel and unusual punishment does not apply to pretrial detainees, pretrial detainees nonetheless are entitled to medical care to the same extent as a prisoner by virtue of Fourteenth Amendment due process guarantees, and the analysis is the same as that under the Eighth Amendment for determining whether a prisoner was subjected to cruel and unusual punishment. *Jackson*, 449 Mich at 430. A claim that denial of medical treatment rose to the level of cruel and unusual punishment requires the plaintiff to demonstrate the objective component, that his or her medical needs were sufficiently serious, and the subjective component, that the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Morden*, 275 Mich App at 334. Negligence is not sufficient to establish deliberate indifference. *Estelle*, 429 US at 104.

In this case, plaintiff has not demonstrated a genuine issue of material fact with regard to whether the non-medical defendants acted with deliberate indifference to a serious medical condition, and thus has not alleged facts sufficient to demonstrate cruel and unusual punishment (or denial of due process). He therefore has not demonstrated that he was deprived of a right secured by the Constitution or laws of the United States by a person acting under color of law, and therefore has no claim against these defendants under 42 USC § 1983. See *Morden*, 275 Mich App at 332.

In his amended complaint, plaintiff alleged that he has diabetes for which he has been prescribed medication. The objective component is demonstrated if a plaintiff demonstrates a medical need that is "one that has been diagnosed by a physician as mandating treatment or one

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Smith*, 158 Mich App at 136 (quotation marks and citation omitted). By alleging that he has diabetes and had been prescribed medication for the condition, plaintiff arguably alleged medical needs sufficiently serious to be considered a serious medical need.

The subjective component inquires whether the non-medical defendants in this case were deliberately indifferent to his serious medical needs, i.e., his diabetes, which means inquiring whether the non-medical defendants either "intentionally denied or unreasonably delayed treatment of a discomfort-causing ailment or willfully failed to provide prescribed treatment without medical justification." *Tobias*, 144 Mich App at 278. If defendants acted reasonably in response to the substantial risk of harm, here being plaintiff's diabetes, defendants were not deliberately indifferent, even if the harm ultimately was not averted. *Jackson*, 449 Mich at 431. In this case, there is no dispute that, upon turning plaintiff over to the jail officers, Deputy Myers informed them that plaintiff reported having diabetes, and thereafter, plaintiff was provided medical care for his diabetes by the medical staff at the jail.

Plaintiff alleges, however, that the non-medical defendants nonetheless acted with deliberate indifference to his diabetes. He argues that the non-medical defendants should have deduced that because he has diabetes he therefore had a medical need for food and water, but they were deliberately indifferent to this medical need. The trial court apparently agreed with this theory of liability. The trial court held, in relevant part:

> Deputy Myers stopped Plaintiff's vehicle and, after conducting some field sobriety tests, arrested him for operating while intoxicated. During this interaction, Plaintiff advised Deputy Myers that he was diabetic. Following Plaintiff's arrest, Deputy Myers transported Plaintiff to a substation and then to a hospital to have his blood drawn. After Plaintiff's blood was drawn, Deputy Myers transported him to Oakland County Jail, and, on their way to the jail, Plaintiff told Deputy Myers that he was hungry. Plaintiff alleges that Deputy Myers' failure to provide him with food after he said he was hungry and she knew he was a diabetic amounted to cruel and unusual punishment.
>
> Deputy Summers appeared on the scene to assist Defendant Myers with the traffic stop. During the traffic stop, Plaintiff stated that he was diabetic. Following Plaintiff's arrest, Deputy Summers impounded Plaintiff's vehicle and conducted an inventory of it, which should have included Plaintiff's prescribed medication and walking cane. Plaintiff alleges that Deputy Summers engaged in cruel and unusual punishment when he failed to deliver Plaintiff's prescribed medication and walking cane to him at the Oakland County Jail and when Deputy Summers failed to include those items in his inventory of the vehicle.
>
> The Jail Deputies were all working at Oakland County Jail while Plaintiff was incarcerated. Deputy Perry received Plaintiff's clothing after he was booked and issued his jail scrubs. Deputy James conducted Plaintiff's medical prescreening and noted that Plaintiff was diabetic and required a 2,800 calorie diet. He referred Plaintiff to the jail's clinic for evaluation. Deputy Weaver released Plaintiff's clothing back to him in preparation for discharge. Deputy Hall released Plaintiff's

property back to him in preparation for discharge.  The jail records do not reflect that Deputy Bowie had an interaction with Plaintiff.  Plaintiff does not allege that he had any other interaction with the Jail Deputies, but he contends that they all were charged with his supervision and care while he was incarcerated, and they failed to provide him with proper medication, food, or water when they knew or should have known that he was diabetic.  Worse, Plaintiff contends that one of the Jail Deputies (although he does not allege which one) dismissively told him that "the jail medical staff would find him if they needed him" when he requested food and water.

\* \* \*

Viewing these facts in the light most favorable to Plaintiff, this Court finds that Plaintiff stated a claim for cruel and unusual punishment under 42 USC § 1983 against Deputy Myers, Deputy Summers, the Jail Deputies, and the Medical Personnel in Count III.  The Court finds that there are genuine issues of material fact "from which the inference could be drawn that substantial risk of serious harm existed[ed] and the Defendants ignored that risk. . . . Moreover, because the Court finds that such questions of material fact exist and finds that there was a "clearly established" constitutional right to proper medical care, Deputy Myers, Deputy Summers, and the Jail Deputies are not entitled to qualified immunity from Plaintiff's claim under 42 USC § 1983 to the extent it relates to allegations of cruel and unusual punishment.

The trial court essentially concluded with regard to the non-medical defendants that there was an issue of material fact whether securing medical treatment for plaintiff by placing him in the care of the medical personnel at the jail was a sufficient response to his diabetes.  Rather, the trial court in essence concluded that there was a question as to whether each non-medical defendant should have known that plaintiff is diabetic, should have determined that plaintiff therefore had a medical need for food and water (and presumably a certain type of food, in a certain amount, and on a particular schedule), and that failure to administer food and water to him was deliberate indifference to a serious medical need.

Contrary to the trial court's determination, the record does not demonstrate that plaintiff sufficiently alleged that his need for food and water was a serious medical need nor that the non-medical defendants were deliberately indifferent.  Again, this Court has stated that the objective component is demonstrated if a plaintiff demonstrates a medical need that is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Smith*, 158 Mich App at 136.  Plaintiff's allegations with respect to these defendants, however, are not merely that they should have recognized his diabetes as a medical condition needing a doctor's attention; it is clear that they did recognize plaintiff's diabetes as a medical need and referred him to the jail's medical personnel.  Rather, plaintiff's theory of liability is that, regardless of the fact that he was under the care of the medical personnel at the jail, the non-medical defendants should have determined independently that because he has diabetes he had a medical need for food and water and should have addressed that need independently of whatever care he was being given by the jail's medical personnel.

-8-

Plaintiff, however, did not demonstrate that his need for food and water, was "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Smith*, 158 Mich App at 136. He alleged that his diabetes was diagnosed; he did not demonstrate that his alleged medical need for food and water was diagnosed, nor that his alleged medical need for food and water was so obvious that lay persons would easily recognize his need for a doctor's attention. Although plaintiff alleged that as a result of lacking food and water he began to experience dizziness and weakness, he does not allege that his symptoms were observed or observable by the non-medical defendants. Because plaintiff did not allege that he had a diagnosed medical need for food and water, nor that his alleged medical need for food and water was so obvious that lay persons would easily recognize that the need required a doctor's attention, plaintiff failed to adequately allege the objective component with respect to his alleged medical need for food and water.

Plaintiff's amended complaint also does not allege in what capacity each defendant had contact with him nor whether each defendant was aware, or even should have been aware, that he has diabetes. With respect to defendant Myers, plaintiff does not dispute that Deputy Myers informed the jail that plaintiff reportedly had diabetes, and that thereafter plaintiff was provided medical care for his diabetes. In his amended complaint, however, plaintiff alleges that defendant Myers "knew or should have known that the individual Defendants at the jail, purportedly Durocher and/or Veatch, gave Fratarcangeli a shot while he was incarcerated." Plaintiff does not explain how the arresting officer would be aware of plaintiff's treatment once he was housed in the jail.

In addition, when Deputy Myers stopped plaintiff she repeatedly asked him if he was ill or needed to check his blood sugar levels. Plaintiff repeatedly denied that he was having any difficulties related to his diabetes.[1] Although he now argues that he eventually told Deputy Myers that he was hungry, he does not allege that he explained to her that his need for food was related to his diabetes. Deputy Myers was not legally obligated to secure food for plaintiff merely because he expressed to her that he was hungry, and the failure to do so was not deliberate indifference to a serious medical need. Plaintiff alleges in his amended complaint that Deputy Myers should have realized that he was not intoxicated because during the time he was in her custody he was conversing with her clearly and coherently; contrary to plaintiff's claims, this suggests that he was not having apparent medical problems at the time he was in her custody.

Plaintiff alleges that Deputy Summers searched his car where his cane and medications were located, but did not deliver the cane and medications to plaintiff at the Oakland County Jail, and failed to disclose these items on the inventory slip when impounding plaintiff's car. Plaintiff does not allege facts to establish whether Deputy Summers knew that plaintiff needed the medication and the cane, nor that Summers had any control over the treatment plaintiff received at the jail. In fact, the medical staff at the jail administered a dose of insulin to plaintiff, which

---

[1] Similarly, although he alleges in his amended complaint that he was denied the use of his cane, he does not allege that he informed Deputy Myers of this, and in fact he told her that he could walk "fine" when she asked him whether he could walk for purposes of the sobriety tests.

makes it difficult to decipher how what Deputy Summers did or did not do concerning plaintiff's medication (or his cane) could constitute cruel and unusual punishment.

Plaintiff alleges that defendants Bowie, Perry, Weaver, Hall, and James were charged with his supervision and care while he was incarcerated and that his intake form noted that he had diabetes and required 2,800 calories per day. Plaintiff does not state in what capacity each of these defendants was responsible for his care, nor whether each defendant actually was aware of his medical need for food and water. Although plaintiff alleges that he asked for food and water and one of his "jailers" told him that "the jail medical staff would find him if they needed him," he does not state that he linked this request to his diabetic condition. Nor does he specify who made this statement and does not allege that it was made by one of these defendants.

The record indicates that defendant Bowie had no contact with plaintiff and was not present at the Oakland County Jail during plaintiff's incarceration; defendant Perry received plaintiff's clothing from him after plaintiff was booked; defendant Weaver released his clothing to him when plaintiff was being discharged from the jail; defendant Hall released plaintiff's property to him in preparation for plaintiff's release; and defendant James conducted medical prescreening with plaintiff and, upon learning that plaintiff was insulin-dependent, referred plaintiff to the jail's medical staff. Thus, plaintiff's allegations do not establish that any of the non-medical defendants at the jail other than James even knew of his medical condition, and James acted appropriately by referring plaintiff to the jail's medical personnel.

Thus, the record suggests that plaintiff informed only Myers and James that he had diabetes; Myers informed the jail staff and James met with plaintiff for a medical intake. Then in light of plaintiff's diabetes, James referred plaintiff to the jail's medical personnel. Plaintiff does not allege that the non-medical defendants acted contrary to any instructions of the medical personnel. Plaintiff therefore has not established that the non-medical defendants acted with deliberate indifference to his medical needs. The non-medical defendants therefore were entitled to summary disposition of plaintiff's remaining claim against them, which is plaintiff's claim under 42 USC § 1983 that these defendants subjected him to cruel and unusual punishment. The trial court therefore erred by denying their motion for summary disposition of this claim.

## 2. QUALIFIED IMMUNITY

Defendants Myers, Summers, Bowie, Perry, Weaver, Hall, and James also contend that regardless of whether a genuine issue of material fact exists regarding plaintiff's claim under 42 USC § 1983, their liability is precluded by qualified immunity. We agree.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Holeton v City of Livonia*, 328 Mich App at 102, quoting *Pearson v Callahan*, 555 US 223, 231; 129 S Ct 808; 172 L Ed 2d 565 (2009) (quotation marks and citation omitted). Qualified immunity is an established defense against a plaintiff's claim for alleged violation of federal rights under 42 USC § 1983. *Morden*, 275 Mich App at 340. A police officer may invoke qualified immunity to avoid the burden of standing trial on a claim that he or she violated the plaintiff's constitutional rights. *Lavigne v Forshee*, 307 Mich App 530, 542; 861 NW2d 635 (2014). The focus is on whether the officer had fair notice that his

or her conduct was unlawful, and the reasonableness of the officer's conduct is judged in light of clearly established laws. *Holeton*, 328 Mich App at 102. Qualified immunity thus provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v Briggs*, 475 US 335, 341; 106 S Ct 1092; 89 L Ed 2d 271 (1986). When a defendant asserts qualified immunity, the burden is on the plaintiff to demonstrate that the defendant is not entitled to it. *Lavigne*, 307 Mich App at 542. To defeat qualified immunity, the trial court must determine that (1) the plaintiff has alleged facts that demonstrate the violation of a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Holeton*, 328 Mich App at 102.

In this case, plaintiff did not allege facts sufficient to demonstrate that the non-medical defendants violated a clearly established statutory or constitutional right. Although the constitutional prohibition against cruel and unusual punishment is clearly established and includes the denial of medical care to a prisoner with a serious medical condition, plaintiff has not alleged any conduct by the non-medical defendants that falls within this prohibition. Indeed, because of steps taken by certain of the non-medical defendants, plaintiff was seen by the jail's medical personnel and received a dose of insulin. Plaintiff failed to establish that it would have been clear to a reasonable officer that his or her conduct was unlawful in the situation confronted. *Holeton*, 328 Mich App at 103. Accordingly, the trial court erred when it denied the non-medical defendants summary disposition of plaintiff's claims under 42 USC § 1983 based on qualified immunity.

## B. DUROCHER AND VEATCH

Defendants Durocher and Veatch contend that the trial court erred in denying their motion for summary disposition of plaintiff's claim under 42 USC § 1983 that they inflicted cruel and unusual punishment upon him, and also plaintiff's claim that they inflicted cruel or unusual punishment upon him in violation of the Michigan Constitution. We agree.

A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion for summary disposition under this section is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*.

The trial court denied Durocher and Veatch's motion for summary disposition under MCR 2.116(C)(8) with regard to plaintiff's claim of cruel and unusual punishment alleged under 42 USC § 1983, stating in pertinent part:

> Defendant Durocher was the doctor who gave an oral order over the telephone to treat Plaintiff's diabetes with insulin and to check his blood sugar. Defendant Veatch was a nurse at the Oakland County jail whom Plaintiff alleged injected him with insulin. Plaintiff alleges that these Medical Personnel failed to give him his prescribed medication and, instead, administered diabetes medication that he was not accustomed to taking. Plaintiff alleges that the Medical Personnel knew or should have known that the medication they administered needed to be ingested

with food and that he required a 2,800 calorie diet, yet they failed to provide him with food or water.

> Viewing these facts in the light most favorable to Plaintiff, this Court finds that Plaintiff stated a claim for cruel and unusual punishment under 42 USC § 1983 against . . . the Medical Personnel in Count III. The Court finds that there are genuine issues of material fact "from which the inference could be drawn that substantial risk of serious harm existed[ed] and the Defendants ignored that risk. . . .

A review of the record, however, does not support the trial court's determination regarding Durocher and Veatch. As discussed, a claim that denial of medical treatment rose to the level of cruel and unusual punishment requires the plaintiff to demonstrate the objective component, that his or her medical needs were sufficiently serious, and the subjective component, that the defendants were deliberately indifferent to the plaintiff's serious medical needs.[2] *Morden*, 275 Mich App at 334. By alleging that he has diabetes and had been prescribed medication for the condition, plaintiff arguably alleged medical needs sufficiently serious to be considered a serious medical need.[3] The subjective component, however, requires a showing that these defendants were deliberately indifferent to his medical needs. "Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment." *Rogers*, 792 F2d at 1058. Deliberate indifference is more than mere negligence, but is instead the equivalent of recklessly disregarding the risk to the prisoner. *Morden*, 275 Mich App at 338-339.

In this case, plaintiff's allegations do not create a genuine issue of material fact that defendants Durocher and Veatch acted with deliberate indifference to his diabetes. Plaintiff alleges that these defendants, among others, were charged with his supervision and care while in the jail and provided him with medication (insulin)[4] that needed to be ingested with food, but failed to provide him with food. Plaintiff does not allege, however, that he asked Durocher and Veatch

---

[2] Although plaintiff did not allege in his First Amended Complaint that Durocher and Veatch were acting under color of law, plaintiff asserts on appeal that they were acting under color of law as private persons jointly engaged with state officials in a prohibited action. Durocher and Veatch do not contest this assertion on appeal.

[3] Plaintiff also suggests for the first time on appeal that the failure by Durocher and Veatch to provide food and water is cruel and unusual punishment in and of itself, apart from the need for medical care.

[4] In its opinion, the trial court observed that Durocher and Veatch "failed to give [plaintiff] his prescribed medication" and instead gave him insulin. Nothing in the record, however, indicates that Durocher and Veatch had the means to verify that the medications in plaintiff's car actually were prescription diabetic medications. At the time plaintiff was arrested, he was exhibiting confusion and other behaviors consistent with someone under the influence of alcohol or another substance. Under the circumstances, it would have been inadvisable, to say the least, to provide plaintiff with medications found in his car.

to give him food and water; rather, plaintiff contends that Durocher and Veatch should have known that he needed food and water for the insulin to be effective. Plaintiff's claim that Durocher and Veatch failed to take the correct steps to address his diabetes sounds in negligence and suggests a malpractice theory; it is insufficient to establish cruel and unusual punishment and may not serve as a basis for a § 1983 claim. See *Morden*, 275 Mich App at 334. Durocher and Veatch therefore were entitled to summary disposition of plaintiff's claim against them under 42 USC § 1983.

Similarly, Durocher and Veatch were entitled to summary disposition of plaintiff's claim under the Michigan Constitution. Although the United States Constitution prohibits cruel and unusual punishment, the Michigan Constitution prohibits cruel *or* unusual punishment. US Const Am VIII; Const 1963, art 1, § 16. Michigan's prohibition against cruel or unusual punishment may be interpreted more broadly than the federal prohibition, see *People v Bullock*, 440 Mich 15, 30-35; 485 NW2d 866 (1992) and *Carlton v Dep't of Corrections*, 215 Mich App 490, 505; 546 NW2d 671 (1996), and therefore may provide a claim where one does not exist under the federal constitution. However, the trial court observed that plaintiff did not demonstrate that the Michigan prohibition against cruel or unusual punishment should be construed more broadly in this case. Because plaintiff did not allege a broader construction in this case, and because the analysis under 42 USC § 1983 results in the conclusion that plaintiff has not alleged a valid claim of cruel and unusual punishment, the same analysis applies under the Michigan Constitution. Durocher and Veatch therefore were entitled to summary disposition of plaintiff's claim of cruel or unusual punishment under the Michigan Constitution.

## C. PLAINTIFF'S CROSS-APPEAL

### 1. FALSE IMPRISONMENT

Plaintiff contends that the trial court erred by granting Deputy Myers summary disposition of Count I of his initial complaint alleging false arrest and false imprisonment, and by granting all defendants summary disposition of Count I of his amended complaint alleging false imprisonment against all defendants. We disagree.

A false imprisonment claim alleges that there has been an unlawful restraint on the plaintiff's liberty or freedom of movement. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 17; 672 NW2d 351 (2003). The elements of false imprisonment are (1) an act committed with the intent to confine another, (2) the act results in confinement, (3) the person confined is conscious of his or her confinement, and (4) the restraint occurred without probable cause to support it. *Walsh v Taylor*, 263 Mich App 618, 627; 689 NW2d 506 (2004). To prevail on a claim of false arrest or false imprisonment, the plaintiff must demonstrate that the arrest was not legal, meaning not based on probable cause. *Peterson Novelties, Inc*, 259 Mich App at 18.

Probable cause to believe that the plaintiff has committed a crime is established by "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Peterson Novelties, Inc*, 259 Mich App at 19. Probable cause cannot be precisely defined, but is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons. *Ornelas v United States*, 517 US 690,

695-696; 116 S Ct 1657; 134 L Ed 2d 911 (1996). Where a plaintiff cannot show that the arrest was illegal, that is, not based on probable cause, the plaintiff cannot prevail on a claim of false arrest or false imprisonment. *Peterson Novelties, Inc*, 259 Mich App at 18. Where the facts are undisputed, whether probable cause exists is a question of law for the court to decide. *Matthews v Blue Cross & Blue Shield of Michigan*, 456 Mich 365, 381; 572 NW2d 603 (1998).

In this case, in his original complaint plaintiff alleged false arrest and false imprisonment against Deputy Myers. In granting Deputy Myers summary disposition, the trial court found both that Myers had probable cause to arrest plaintiff and also that Myers was entitled to governmental immunity. The trial court stated, in relevant part:

> Here, after reviewing the in-car video, this Court would find that Deputy Myers had probable cause to stop Plaintiff's vehicle after she observed Plaintiff driving below the speed limit, failing to maintain his speed, crossing the outer line of his lane, and turning on his turn signal well before turning. This Court also would find that Deputy Myers had probable cause to arrest Plaintiff for Operating While Intoxicated or Visibly Impaired following her interaction with him and his performance on the field sobriety tests.

The trial court's determination that Deputy Myers had probable cause to arrest plaintiff is supported by the record. The record indicates that on the day in question, Deputy Myers saw plaintiff driving erratically, traveling much slower than the speed limit, and occasionally swerving onto the white line on the right side of the lane. The video shows that plaintiff activated his right turn signal, then passed a road and some driveways before turning right into the parking lot of a McDonalds. After Deputy Myers stopped plaintiff, he dropped his license on the ground and struggled to pick it up, and could not locate his proof of insurance. Plaintiff stated that he was on his way home from a friend's house but he could describe only vaguely where the friend lived. Plaintiff's eyes were bloodshot, his pupils were pin points, and plaintiff was unable to successfully perform several sobriety tests. Viewing these circumstances from the perspective of a reasonable and prudent person, Deputy Myers had probable cause to conclude that plaintiff was operating his motor vehicle while impaired in some way. Here, although it was later determined that plaintiff had not consumed alcohol or an illegal substance, his erratic driving and his demeanor after being stopped provided probable cause for his arrest. Being supported by probable cause, the arrest cannot support an allegation of false arrest or false imprisonment. The trial court therefore did not err in granting defendants summary disposition of plaintiff's claims of false arrest/false imprisonment.

## 2. CRUEL AND UNUSUAL PUNISHMENT

Plaintiff also contends that, because it leaves him without a remedy, the trial court erred in granting the non-medical defendants summary disposition of Count II of his amended complaint alleging a violation of the prohibition of Michigan's Constitution against cruel or unusual punishment. Again, we disagree. A plaintiff may not recover damages "for a violation of the Michigan Constitution in an action against a municipality or an individual government employee." *Jones v Powell*, 462 Mich 329, 335; 612 NW2d 423 (2000). In *Jones*, our Supreme Court explained that its previous decision in *Smith v Dep't of Public Health*, 428 Mich 540; 410 NW2d 749 (1987) "only recognized a narrow remedy against the state on the basis of the unavailability

-14-

of any other remedy. Those concerns are inapplicable in actions against a municipality or an individual defendant," who, unlike states and state officials sued in an official capacity, may be sued under 42 USC § 1983. *Jones*, 462 Mich at 337.

Count II of plaintiff's amended complaint alleges against all defendants that they violated the prohibition of Michigan's Constitution against cruel or unusual punishment. The trial court granted the non-medical defendants summary disposition of Count II, observing that plaintiff did not allege how his rights in this case were different under the state constitution than under the federal constitution, and held that "[t]his Court declines to recognize a new remedy in contravention of *Jones* and notes that, just as in *Jones*, plaintiff is not left without any remedy because he may bring a claim against Deputy Myers, Deputy Summers, and the Jail Deputies under 42 USC § 1983 to redress an alleged violation of his federal constitutional right to free from cruel and unusual punishment." Because plaintiff points to no authority that would permit him under the facts of this case to pursue a claim against defendants for a violation of the Michigan Constitution, the trial court correctly concluded that his remedy for a claim of cruel and unusual punishment was under 42 USC § 1983.

### 3. PLAINTIFF'S CLAIM AGAINST OAKLAND COUNTY

Plaintiff next contends that the trial court erred by granting Oakland County summary disposition of his claim under 42 USC § 1983, alleging false arrest, false imprisonment, and cruel and unusual punishment. We disagree.

For liability to be imposed against a municipality under 42 USC § 1983, the plaintiff must demonstrate that (1) his or her federal constitutional or statutory rights were violated, and that (2) the violation was caused by a policy or custom of the municipality. *Johnson v Vanderkooi*, 502 Mich 751, 762; 918 NW2d 785 (2018). A plaintiff cannot predicate liability against a municipality on a theory of respondeat superior. *Id*. at 763. Thus, in a suit brought pursuant to 42 USC § 1983 against a municipality, "the plaintiff must plead and be able to prove that the municipality's policy or custom led to the deprivation of the federal constitutional or statutory right at issue." *Holeton*, 328 Mich App at 106. In his initial complaint, plaintiff alleged that defendant Oakland County was liable under 42 USC § 1983 because the unconstitutional actions of Deputy Myers and the Doe defendants were taken pursuant to an Oakland County policy or custom. Plaintiff did not identify in his complaint any policy or custom of Oakland County that caused the alleged constitutional violations. Because plaintiff did not plead that a particular policy or custom of Oakland County led to the deprivation of the federal constitutional rights at issue, the trial court did not err in granting Oakland County summary disposition of this claim.

### 4. SUMMARY DISPOSITION WAS NOT PREMATURE

We also reject plaintiff's contention that the trial court's order granting defendants partial summary disposition of plaintiff's claim was premature. Defendants Myers, Summers, Bowie, Perry, Weaver, Hall, and James moved for summary disposition under MCR 2.116(C)(7). Whether a claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide; however, when a relevant factual dispute exists, summary disposition is not appropriate. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Defendants Durocher and Veatch moved for summary disposition under MCR 2.116(C)(8). A

motion under MCR 2.116(C)(8) may be granted only when a claim is "so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

In this case, plaintiff suggests in his one-paragraph argument that discovery likely will reveal additional facts and summary disposition therefore is premature. Plaintiff, however, does not identify any factual disputes, nor does he point to any facts that if developed could provide a basis for recovery. Plaintiff only suggests that discovery could unearth facts currently unknown that might give rise to a factual dispute. Because plaintiff does not demonstrate that a question of fact actually exists to the extent that factual development may provide a basis for recovery, see *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010), plaintiff has not demonstrated that summary disposition was premature.

## 5. FREEDOM OF INFORMATION ACT

Plaintiff also contends that the trial court erred in granting defendant Oakland County summary disposition of Count III of plaintiff's original complaint alleging a violation of Michigan's Freedom of Information Act (FOIA), MCL 15.231, *et seq*. We disagree.

Michigan's FOIA provides for the disclosure of public records in the possession of a public body. *Kent Co Deputy Sheriff's Ass'n v Kent Co Sheriff*, 463 Mich 353, 360; 616 NW2d 677 (2000). It is a pro-disclosure statute, *Thomas v New Baltimore*, 254 Mich App 196, 201; 657 NW2d 530 (2003), and generally mandates the full disclosure of public records. *Ellison v Dep't of State*, 320 Mich App 169, 176; 906 NW2d 221 (2017). When a request for records is made under the FOIA, a public body has a duty to provide access to or copies of the requested records, unless those records are exempt from disclosure. *Pennington v Washtenaw Co Sheriff*, 125 Mich App 556, 564; 336 NW2d 828 (1983). MCL 15.235(5) requires a public body denying a request "in whole or in part" to send a written notice to the person making the request, including:

> (a) An explanation of the basis under this act or other statute for the determination that the public record, or a portion of that public record, is exempt from disclosure, if that is the reason for denying all or a portion of     the request.

> (b) A certificate that the public record does not exist under the name given by the requester or by another name reasonably known to the public body, if that is the reason for denying the request or a portion of the request.

If a public body denies all or part of a request for records, the requesting person may commence a civil action in circuit court. MCL 15.240(1)(b). If the requesting person thereafter "prevails" in that action, MCL 15.240(6) provides for the award of attorney fees, costs, and disbursements. In addition, MCL 15.240b provides, in relevant part:

> If the court determines, in an action commenced under this act, that a public body willfully and intentionally failed to comply with this act or otherwise acted in bad faith, the court shall order the public body to pay, in addition to any other award or sanction, a civil fine of not less than $2,500.00 or more than $7,500.00 for each occurrence. . . .

A plaintiff "prevails" under MCL 15.240(6) if "the action was reasonably necessary to compel the disclosure [of public records], and the action had a substantial causative effect on the delivery of the information to the plaintiff." *Amberg v Dearborn*, 497 Mich 28, 34; 859 NW2d 674 (2014). If a public body fails to adequately respond to a plaintiff's request for records, and that failure necessitates the plaintiff bringing a circuit court action under the FOIA to compel an adequate response from the public body, that plaintiff may prevail within the meaning of MCL 15.240(6) even if the FOIA action did not result in the plaintiff receiving additional records. See *Hartzell v Mayville Comm School Dist*, 183 Mich App 782, 789; 455 NW2d 411 (1990). A plaintiff may be determined to have prevailed within the meaning of MCL 15.240(6) if the public body violated the FOIA by failing to properly respond to the request as mandated by the statute. See *Local 312 of American Federation v Detroit*, 207 Mich App 472, 474; 525 NW2d 487 (1995).

In this case, plaintiff contends that on March 14, 2018, his attorney requested under the FOIA a copy of "all videos and audios from Deputy Myers and her patrol vehicle" showing his stop and arrest. Oakland County responded to the FOIA request on April 4, 2018, stating with respect to the request that "there are no responsive records." On May 17, 2018, plaintiff received a copy of the video from another source. On June 1, 2018, plaintiff initiated this action, alleging in part that Oakland County violated the FOIA because it did not provide him with the video and stated that the video did not exist when the video did, indeed, exist. The trial court granted Oakland County summary disposition of plaintiff's claim under the FOIA, holding that plaintiff's claim was moot.

The trial court's holding is supported by the record. The record in this case indicates that Oakland County's failure to respond adequately to plaintiff's request for records did not necessitate his bringing the circuit court action under the FOIA to compel Oakland County to respond. Plaintiff therefore did not "prevail" within the meaning of the act because the action was not reasonably necessary to compel the disclosure of the records, nor did it have a substantial causative effect on the delivery of the information to the plaintiff. *Amberg*, 497 Mich at 34. Rather, plaintiff received the records from another source before initiating the lawsuit. Plaintiff alleged no facts to suggest that Oakland County acted willfully or intentionally. The trial court therefore did not err when it granted defendant Oakland County summary disposition of plaintiff's claim under the FOIA.

We affirm the trial court's grant of partial summary disposition to defendants, reverse the trial court's denial of summary disposition of the remaining counts of plaintiff's complaint, and dismiss the remaining claims as to all defendants.

/s/ David H. Sawyer
/s/ Michael F. Gadola